(73 App. Div. 489.)

### SIMONOWITZ v. SCHWARTZ.

(Supreme Court, Appellate Division, First Department. June 20, 1902.)

New Trial—Newly Discovered Evidence—Diligence.

 Trial of an action to recover the amount of a check given to plaintiff, and lost by him, began on May 24th, and closed on May 27th; and plaintiff gave his testimony early the first day, in which he stated that a certain witness, who was present, had accompanied him to defendant's place of business after the loss of the check. There was judgment for plaintiff, and, after appeal and affirmance, defendant moved for new trial on the ground of newly discovered evidence, consisting of the testimony of such witness and another person, who was also present at the trial, and with whom defendant was well acquainted, and of other witnesses, whose names were furnished by the first two, that plaintiff had been seen in possession of the check after the time he alleged that it was lost. *Held,* that it was error to grant a new trial, as defendant had not shown diligence in discovering the evidence.

Appeal from trial term, New York county.

Action by Nathan Simonowitz against Max Schwartz. From an order granting defendant a new trial on the ground of newly discovered evidence, plaintiff appeals. Reversed.

Argued before PATTERSON, INGRAHAM, McLAUGHLIN, HATCH, and LAUGHLIN, JJ.

Abraham B. Schleimer (William Rumsey, of counsel), for appellant. Leopold Mischowitz, for respondent.

HATCH, J. This action was brought to recover the sum of $300, being the amount of a check which the defendant gave to the plaintiff, and which the plaintiff claims that he lost the same evening, and immediately notified the defendant that he had lost the same, but that the defendant failed to notify the bank upon which the check was drawn to stop payment thereon until the second day after the plaintiff notified

the defendant, and in the meantime the check had been presented by the finder, and the bank had cashed the same. The defendant contends that the plaintiff did not notify him of the loss of the check until after it had been cashed by the bank, and that he was therefore powerless to stop the payment of the same. The evidence disclosed that the defendant was an officer of an insurance society, and on the evening of June 4, 1900, as such officer, he gave the plaintiff a check for $400, drawn on the State Bank, in the city of New York. Simonowitz then asked Schwartz if he would cash the check for him, and Schwartz told him to come to his place of business, at a restaurant known as "Little Hungary," 255–263 East Houston street, in the borough of Manhattan, and that he would cash the check for him. They went to Schwartz's place of business, where he informed Simonowitz that, owing to the lateness of the hour,—it then being 10 o'clock in the evening,—he could not pay him the full amount of the check, and therefore gave to Simonowitz $100 in cash, and his personal check, drawn on the State Bank, for $300. Thus far there is practically no dispute in the evidence of the plaintiff and defendant. Simonowitz testified that he then went directly home, and when he arrived there he found that he had lost the check; that he immediately returned to Schwartz's place of business and informed him of the loss; and that Schwartz told him to come around again in the morning. The following morning, June 5th, at about 10 o'clock, Simonowitz went to Schwartz, who told him to take with him a man who spoke English, go to the bank, and stop payment of the check, and he also gave Simonowitz a letter directing that the payment of the check be stopped. This letter Simonowitz took to the bank and delivered to a clerk at about 10 o'clock the morning of the 5th, and went back and reported what he had done to Schwartz, who, in Simonowitz's presence, called up the bank on the telephone, and then reported to Simonowitz that the payment of the check had been stopped. On the day following (the 6th), Simonowitz went to Schwartz and asked for the money, and Schwartz told him to wait until the next day. That on some day thereafter, when Simonowitz called to see Schwartz about the money, Schwartz told him that the check had been paid by the bank, and showed him a check with Simonowitz's name indorsed in German on the back. Simonowitz then testified that he never indorsed his name upon the back of the check; that the indorsement was in German; that he could not write German, but could only sign his name in Hebrew. Schwartz refused to pay Simonowitz the amount of the check which had been lost, or any part of it. Schwartz testified that the first time he saw Simonowitz after he had given him the $300 check was on the afternoon of the 5th of June, when Simonowitz, with a friend, came to him and asked him to indorse Schwartz's name on the check, so that he could get the money; that the next day, the 6th of June, Simonowitz returned and told Schwartz that he had lost the check, and Schwartz immediately telephoned the bank to stop payment of the check, and was informed by the bank that it was too late, as the bank had closed for the day, but to send in a written order on the next day. The next morning, about 9 or 9:30 o'clock, Schwartz gave Simonowitz the letter directing payment of

the check to be stopped, which was taken to the bank, and which reads as follows:

"New York, June 7th, 1900.

"Mr. Vorhies, Cashier State Bank, 378 Grand Street, City—Dear Sir: Please stop payment on check issued to Nathan Simonowitz on June 4 for 300 $^{00}/_{100}$ No. 1,564 check has been indorsed by me. By so doing you will greatly favor me.

"Yours truly,　　　　　　　　　　　　　　　Max Schwartz."

On the 6th day of June the bank cashed a check drawn by Schwartz to the order of Simonowitz for $300, and indorsed on the back by Max Schwartz, and written on the back thereof in German the name of Nathan Simonowitz; but the number of this check was 1,985. This last-mentioned check was offered in evidence by the defendant, and Simonowitz swears that it was not the check given to him on the 4th day of June. Schwartz testified that it was the same check that he gave him on the 4th day of June; that the stub number in his check book is 1,564, and that the reason for the discrepancy in number was that when he wrote the check he made a mistake in numbering it 1,564; that he tore one up, and took another from the back of the book, numbered 1,985, and gave that to Simonowitz, but made no record of it on the stubs in his check book.

The jury brought in a verdict in favor of the plaintiff for $318, being the amount of the check, with interest thereon from the time the cause of action accrued, and judgment was entered thereon May 27, 1901. From such judgment the defendant appealed to this court, claiming that the verdict of the jury was against the weight of evidence. This court on January 10, 1902, affirmed the judgment (Simonowitch v. Schwartz, 67 App. Div. 535, 74 N. Y. Supp. 221), holding that a case was made for submission to the jury. On September 13, 1901, the defendant made a motion for a new trial on affidavits tending to show newly discovered evidence, such motion was granted, and a new trial was ordered. From such order the present appeal is taken.

It appears by the affidavits upon which the motion was based that the newly discovered evidence consists wholly of matters tending to contradict the testimony of the plaintiff, and to show that he was in possession of the check and exhibited the same to a number of people after the time when he claimed to have lost the same, and reported such loss to the defendant. The latter claimed that he knew nothing about the existence of this testimony until some considerable time after the rendition of the verdict, and that he discovered it by making an application to one Schaumburg, who informed him that the plaintiff had possession of the check, and who also put him upon the track of the other witnesses who had seen the check in the plaintiff's possession after the time when he testified that he had lost it, and notified the defendant. One Gross makes an affidavit that he was a member of the insurance society from whom the plaintiff received the first check; that on the 6th day of June he was in the shoe store of one Geist, who had employed the plaintiff, and was informed by him that the plaintiff had the check, and exhibited it to him on the 5th day of June, together

with some money; and that subsequent to that time the plaintiff
informed Geist that he had lost both the check and the money.
The whole of the testimony claimed to be newly discovered related
to the claim that the plaintiff was in possession of the check after
the time when he testified that he had lost it. The trial was begun
on Friday, May 24th, and the case was finished on Monday, May
27th. The plaintiff gave his testimony early on Friday, so that the
defendant knew by noon of that day the claim of the plaintiff, and
the testimony which he had given. At this time Schaumburg and
Gross were both present in the court. The defendant knew, if it
was a fact, that Schaumburg accompanied the plaintiff to Schwartz's
place of business after the loss of the check. Schaumburg so tes-
tifies, and the defendant states that the plaintiff came to him with a
friend. Schaumburg and the witness Gross were both well ac-
quainted with the defendant, and although the defendant knew on
Friday morning what the plaintiff had testified to, and knew that
Schaumburg and Gross were both present in court, yet he made no
inquiry of them with respect to their knowledge concerning the
check, nor were either called as witnesses, although, confessedly,
the defendant subsequently learned the information possessed by
them, and was thereby enabled to discover the other witnesses. The
defendant neither made inquiry of either of these men during the
trial nor thereafter, but took an appeal from the judgment, and
sought to reverse the same by such remedy. It was only after all
of these steps had been taken that he made inquiry of Schaumburg
and Gross, although he had two full days in which to make such
inquiry after the plaintiff had given his testimony. Upon these
facts, we think the defendant was guilty of gross negligence in fail-
ing to make the inquiry of the witnesses which were available at his
hand, not only during the trial, but at all times thereafter. In Con-
able v. Smith (Sup.) 19 N. Y. Supp. 446, it was said:

> "It appears that upon the trial of the action the maker of the note, Henry
> Garretsee, was present in court, and heard the testimony of the two de-
> fendants to the effect that this alteration had been made in the note. But
> he was not called as a witness on either side. The fact that he was in
> court was known to the defendant. * * * He further says, however,
> that he did not know what this witness would testify to, and hence did not
> call him. But under the well-established rule governing motions for new
> trials upon the ground of newly discovered evidence, it is not permissible
> for parties at the trial thus to experiment with the court, and afterwards
> claim the privilege of another trial under the pretense that their evidence is
> newly discovered."

This doctrine finds precise application to this case. Here, as there,
the two witnesses were in court, and inquiry of them would have
at once developed all of the facts upon which the defendant now
relies. He made no such inquiry, nor did he take the slightest step
in attempting to find out what these witnesses knew or what they
would testify to. There was an abundance of time for him to have
discovered the evidence which he now seeks to make available, pro-
cured every witness, and presented each witness and his evidence to
the court on Monday, when the case was with him. He chose to
do nothing, but, in the language of the authority we have cited,

experimented with the court as to the sufficiency of the testimony which he produced, and upon which he asked judgment in his favor. The authorities are uniform and abundant that a party under such circumstances is required to exercise diligence and take the necessary steps promptly to discover the existence of such testimony. Biddescomb v. Cameron, 58 App. Div. 42, 68 N. Y. Supp. 568; Reid v. Gaedeke, 38 App. Div. 107, 57 N. Y. Supp. 414; Smith v. Rentz, 73 Hun, 195, 25 N. Y. Supp. 914; Sayer v. King, 21 App. Div. 624, 47 N. Y. Supp. 420, 422; Thompson v. Welde, 27 App. Div. 186, 50 N. Y. Supp. 618. Concededly, the defendant did not in this case exercise the slightest degree of diligence. He did nothing, and, having remained passive and taken his chances of a favorable result, he fails to make a case which entitled him to the favorable consideration of the court, based upon legal rights, or as matter of favor. The motion for a new trial should therefore have been denied.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.